**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ELITE GAMING TECH LLC., | ) | Case No. |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| HITACHI LTD. and | ) | |
| HITACHI VANTARA CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Elite Gaming Tech LLC. ("EGT" or "Plaintiff") for its Complaint against Defendants Hitachi Ltd. and Hitachi Vantara Corporation (collectively, "Hitachi" or "Defendants") alleges as follows:

**THE PARTIES**

1.      EGT is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 102 E. Crockett Street, Marshall, Texas 75670.

2.      Upon information and belief, Hitachi, Ltd. is a Japanese corporation, organized and existing under the laws of Japan, with its principal place of business located at 6-6, Marunouchi 1-chome, Chiyoda-Ku, Tokyo, 100-8280, Japan, and may be served pursuant to the provisions of the Hague Convention.  Upon information and belief, Hitachi Vantara Corporation is a Delaware corporation.  Upon information and belief, Hitachi Vantara Corporation has a regular and established place of business in Colin County, Texas at 18111 Preston Road, # 400, Dallas, Texas 75252.  Hitachi is a leading manufacturer and seller of computers and server equipment in the

world and in the United States.  Upon information and belief, Hitachi does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

## JURISDICTION

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Defendants.  Defendants regularly conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this Judicial District and/or have contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 and pursuant to 28 U.S.C. § 1400(b) because, among other things, Hitachi Ltd. is not a resident of the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3) and because Hitachi Vantara Corporation maintains a regular and established place of business in this Judicial District in Colin County, Texas at 18111 Preston Road, # 400, Dallas, Texas 75252.

6.      Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to their substantial business in this State and Judicial District, including (a) at least part of their past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENTS-IN-SUIT

7.      On January 9, 2007, the United States Patent and Trademark Office duly and legally

issued U.S. Patent No. 7,162,578 (the "'578 Patent") entitled "Digital Device Configuration and Method."     A   true   and   correct   copy   of   the   '578   Patent   is   available   at: http://pdfpiw.uspto.gov/.piw?Docid=07162578.

8.     On January 9, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,162,577 (the "'577 Patent") entitled "Digital Device Configuration and Method."     A   true   and   correct   copy   of   the   '577   Patent   is   available   at: http://pdfpiw.uspto.gov/.piw?Docid=07162577.

9.     On June 9, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,546,411 (the "'411 Patent") entitled "Digital Device Configuration and Method."   copy of the '411 Patent is available at: http://pdfpiw.uspto.gov/.piw?Docid=07546411.

10.     On April 10, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,940,025 (the "'025 Patent") entitled "Digital Device Configuration and Method."     A   true   and   correct   copy   of   the   '025   Patent   is   available   at: http://pdfpiw.uspto.gov/.piw?Docid=09940025.

11.     On January 14, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,631,196 (the "'196 Patent") entitled "Digital Device Configuration and   Method."     A   true   and   correct   copy   of   the   '196   Patent   is   available   at: http://pdfpiw.uspto.gov/.piw?Docid=08631196.

12.     On March 30, 2010, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,689,785 (the "'785 Patent") entitled "Digital Device Configuration and Method."     A   true   and   correct   copy   of   the   '785   Patent   is   available   at: http://pdfpiw.uspto.gov/.piw?Docid=07689785.

13.     EGT is the sole and exclusive owner of all right, title, and interest in the '578 Patent,

the '577 Patent, the '411 Patent, the '025 Patent, the '196 Patent, and the '785 Patent, (collectively, the "Patents-in-Suit"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit.  EGT also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

14.     EGT has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit.  On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

**FACTUAL ALLEGATIONS**

15.     The Patents-in-Suit generally cover systems and methods for use in servers, motherboards, mobile devices, laptops, and desktop PCs.

16.     The '578 Patent generally relates to an electromechanical data storage arrangement interfaced with a host.  The technology described in the '578 Patent was developed by Curtis H. Bruner, Lance R. Carlson, and Jeffrey E. Mast.  For example, the technology is implemented by infringing servers, laptops and PCs that include an ~~electromechanical digital data storage arrangement that includes two or more devices that utilize bi-directional control related data and routes bi-directional control related serial data to the one or more of the device~~<ins>an electromechanical storage arrangement, a host processing arrangement, and a firmware arrangement which stores and executes firmware updates limited to a difference between the first portion of the firmware configuration and the updated firmware configuration</ins>.

17.     The '577 Patent generally relates to an electromechanical data storage arrangement interfaced with a host.  The technology described in the '577 Patent was developed by Curtis H. Bruner, Lance R. Carlson, and Jeffrey E. Mast.  For example, the technology is implemented by

infringing servers, laptops, and PCs that include an interface for electrically connecting an electromechanical digital data signal storage arrangement and a host device using a plurality of electrical conductors, such that a selected one of the conductors is multiplexed to carry both read gate signals and write gate signals.

18.     The '411 Patent generally relates to a digital storage element configured for access by a user responsive to a native control code.  The technology described in the '411 Patent was developed by Curtis H. Bruner, Lance R. Carlson, and Jeffrey E. Mast.  For example, the technology is implemented by infringing servers, laptops, and PCs that include a digital data storage arrangement configured to be selectively coupled and uncoupled with a programming arrangement, which can program a channel to customize the interface formed by the channel between the rotatable read/write medium and the head arrangement.

19.     The '196 Patent generally relates to a digital storage element configured for access by a user responsive to a native control code.  The technology described in the '196 Patent was developed by Curtis H. Bruner, Lance R. Carlson, and Jeffrey E. Mast.  For example, the technology is implemented by infringing servers, laptops, PCs, phones and tablets that contain a digital data storage arrangement which performs portions of data transfer operation in response to two or more actions.

20.     The '025 Patent generally relates to a digital storage element configured for access by a user responsive to a native control code.  The technology described in the '025 Patent was developed by Curtis H. Bruner, Lance R. Carlson, and Jeffrey E. Mast.  For example, the technology is implemented by infringing servers, laptops, tablets, phones, and PCs that monitor the user interaction and transfer selected data from digital data storage arrangements to solid-state memory.

21.     The '785 Patent generally relates to systems and methods for transferring data between storage components in a device.  The technology described in the '785 was developed by Curtis H. Bruner, John F. Fletcher, and Frida E. R. Fletcher.  For example, the technology is implemented by infringing servers, laptops, and PCs that contain an electromechanical data storage arrangement, at least a portion of which is within a handheld enclosure, configured to transfer data based on user interaction.

22.     Third-parties Western Digital ("WD") and Hitachi Global Storage Technologies ("HGST") supply Hard Disk Drives ("HDDs") that implement the infringing technologies.  These Hard Disk Drives include WD Blue, Black, Red, Purple, and Gold drives, as well as HGST Ultrastar, Travelstar, Deskstar, Endurastar, and Cinemastar drives.  Hitachi makes, uses, sells, and/or imports computers, such as desktops, laptops, tablets, and servers, that include one or more WD and/or HGST HDDs.  For example, upon information and belief, these infringing computers include the Hitachi computers that include one or more WD and/or HGST HDDs, such as the HGST Travelstar 5k1500.

23.     Hitachi has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import, products including, but not limited to, servers including, but not limited to, Hitachi Servers including, but not limited, to Hitachi Virtual Storage Platform 5000 Series (VSP) Servers including but not limited to, the E Series, F, Series, G, Series, and RF Series servers, Advanced Server DS2552 servers, Hitachi NAS Platform Servers including, but not limited to, the HNAS 5000 Series systems, Hitachi Content Platform Modules including, but not limited to, the G11, VM, S11, and S31 modules, Hitachi Bladesymphony Servers including, but not limited to, the Bladesymphony 1000, 2000 and 320 Series servers, Hitachi Compute Blade Servers including

but not limited to, the CB520H and CB520X servers, Hitachi Everflex solutions, desktop PCs, laptop computers, as well as Hitachi tablets and handheld devices that infringes the Patents-in-Suit.

## COUNT I
### (Infringement of the '578 Patent)

24.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

25.     EGT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '578 Patent.

26.     Defendants have and continue to directly infringe the '578 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '578 Patent.  Such products include computer devices, such as laptops, desktops, servers, and tablets that utilize an electromechanical storage arrangement, such as a WD or HGST HDD, a host processing arrangement, and a firmware arrangement which stores and executes firmware updates limited to a difference between the first portion of the firmware configuration and the updated firmware configuration.  On information and belief, such Hitachi products include at least the server, laptop, and desktop systems that include one or more WD and/or HGST HDDs.

27.     For example, Defendants have and continue to directly infringe at least claim 25 of the '578 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include a host processing arrangement, and a firmware arrangement which stores and executes firmware updates limited to a difference between the first portion of the firmware configuration and the updated firmware configuration, such as the Hitachi VSP 5500H.

28.     The Hitachi VSP 5500H includes a host device having a host processing

arrangement for controlling the overall host device and for operational support of an electromechanical storage arrangement which is initially provided separate from the host device, and which stores digital data on a rotatable disk, and a particular firmware configuration is used for controlling a particular version of the storage arrangement.  Upon information and belief, the storage arrangement may be provided in an updated version which requires an updated firmware configuration.  Upon information and belief, the firmware control arrangement comprises a firmware ROM section of the host device which stores at least a first portion of the particular firmware configuration for controlling the particular version of the storage arrangement.  Upon information and belief, the firmware update is stored separate from the first portion of the firmware configuration, that is limited to a difference between the first portion of the firmware configuration and the updated firmware configuration for access by the host processing arrangement.  Upon information and belief, the firmware control arrangement further comprises an instruction set that causes the host processing arrangement to retrieve the firmware update from the storage arrangement.  Upon information and belief, the firmware update is executed using the difference, along with executing an unmodified part of the first portion of the firmware configuration from the firmware ROM section, to implement the updated firmware configuration without a need to replace the first portion of the firmware configuration as stored in the firmware ROM.  Upon information and belief, the first portion of the firmware configuration is required to allow the storage arrangement to access a second portion of the firmware configuration that is stored on the rotatable disk.  Upon information and belief, the firmware update includes the difference in the first portion of the updated firmware configuration, such that the firmware update is required to access data that is stored on the disk of the updated version of the storage arrangement.

29.    Defendants have and continue to indirectly infringe one or more claims of the '578

Patent by knowingly and intentionally inducing others, including Hitachi customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as laptops, desktops, and servers, that include a host processing arrangement, and a firmware arrangement which stores and executes firmware updates limited to a difference between the first portion of the firmware configuration and the updated firmware configuration.

30.     Defendants, with knowledge that these products, or the use thereof, infringe the '578 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '578 Patent by providing these products to end-users for use in an infringing manner.

31.     Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '578 Patent, but while remaining willfully blind to the infringement.

32.     EGT has suffered damages as a result of Defendants' direct and indirect infringement of the '578 Patent in an amount to be proved at trial.

33.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '578 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '577 Patent)

34.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

35.     EGT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '577 Patent.

36.     Defendants have and continue to directly infringe the '577 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '577 Patent.  Such products include computer devices, such as laptops, desktops, servers, and tablets, that utilize an electromechanical storage arrangement, such as a WD or HGST HDD, and include an interface for electrically connecting an electromechanical digital data signal storage arrangement and a host device using a plurality of electrical conductors, such that a selected one of the conductors is multiplexed to carry both read gate signals and write gate signals.  On information and belief, such Hitachi products include at least the server, laptop, and desktop systems that include one or more WD and/or HGST HDDs.

37.     For example, Defendants have and continue to directly infringe at least claim 1 of the '577 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include an interface for electrically connecting an electromechanical digital data signal storage arrangement and a host device using a plurality of electrical conductors, such that a selected one of the conductors is multiplexed to carry both read gate signals and write gate signals, such as the Hitachi VSP 5500H.

38.     The Hitachi VSP 5500H includes a digital system comprising an electromechanical digital data storage arrangement including a rotatable disk, which is responsive to a read gate signal for initiating a read therefrom and responsive to a write gate signal for initiating a write thereto. The Hitachi VSP 5500H further includes a host device that is configured for controlling the data storage arrangement and for generating a read gate signal and a write gate signal in a mutually exclusive way.  Upon information and belief, the Hitachi VSP 5500H further includes an interface electrically interconnecting the data storage arrangement and the host device using a plurality of

electrical conductors, such that a selected one of the conductors is multiplexed to carry both the read gate signal and the write gate signal.

39.     Defendants have and continue to indirectly infringe one or more claims of the '577 Patent by knowingly and intentionally inducing others, including Hitachi customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as laptops, desktops, servers, that include an interface for electrically connecting an electromechanical digital data signal storage arrangement and a host device using a plurality of electrical conductors, such that a selected one of the conductors is multiplexed to carry both read gate signals and write gate signals.

40.     Defendants, with knowledge that these products, or the use thereof, infringe the '577 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '577 Patent by providing these products to end-users for use in an infringing manner.

41.     Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '577 Patent, but while remaining willfully blind to the infringement.

42.     EGT has suffered damages as a result of Defendants' direct and indirect infringement of the '577 Patent in an amount to be proved at trial.

43.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '577 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT III
### (Infringement of the '411 Patent)

44.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

45.     EGT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '411 Patent.

46.     Defendants have and continue to directly infringe the '411 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '411 Patent.  Such products include computer devices, such as laptops, desktops, servers, and tablets, that utilize an electromechanical storage arrangement, such as a WD or HGST HDD and that include a digital data storage arrangement configured to be selectively coupled and uncoupled with a programming arrangement, which can program a channel to customize the interface formed by the channel between the rotatable read/write medium and the head arrangement.  On information and belief, such Hitachi products include at least the server, laptop, and desktop systems that include one or more WD and/or HGST HDDs.

47.     For example, Defendants have and continue to directly infringe at least claim 1 of the '411 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include a digital data storage arrangement configured to be selectively coupled and uncoupled with a programming arrangement, which can program a channel to customize the interface formed by the channel between the rotatable read/write medium and the head arrangement, such as the Hitachi VSP 5500H.

48.     The Hitachi VSP 5500H performs a method using an electromechanical digital data storage arrangement including a disk for storing first data thereon, the digital data storage

arrangement including two or more digital devices that each have a dedicated serial interface. Upon information and belief, using one or more WD or HGST HDDs, the Hitachi VSP 5500H provides bi-directional control related serial data that is clocked using a clock signal.  Upon information and belief, using one or more WD or HGST HDDs, the Hitachi VSP 5500H writes first data to a disk using the clock signal as a time base reference.  Upon information and belief, using one or more WD or HGST HDDs, the Hitachi VSP 5500H sets a serial router to route the bi-directional control related serial data to a selected one of the digital devices so as to implement a particular command set for the selected one of the digital devices.  Upon information and belief, using one or more WD or HGST HDDs, the Hitachi VSP 5500H routes the bi-directional control related serial data to the selected one of the digital devices via the dedicated serial interface of the selected device.

49.     Defendants have and continue to indirectly infringe one or more claims of the '411 Patent by knowingly and intentionally inducing others, including Hitachi customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as laptops, desktops, servers, that include a digital data storage arrangement configured to be selectively coupled and uncoupled with a programming arrangement, which can program a channel to customize the interface formed by the channel between the rotatable read/write medium and the head arrangement.

50.     Defendants, with knowledge that these products, or the use thereof, infringe the '411 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '411 Patent by providing these products to end-users for use in an infringing manner.

51.     Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including endusers, infringe the '411 Patent, but while remaining willfully blind to the infringement.

52.     EGT has suffered damages as a result of Defendants' direct and indirect infringement of the '411 Patent in an amount to be proved at trial.

53.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '411 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

**COUNT IV**
**(Infringement of the '025 Patent)**

54.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

55.     EGT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '025 Patent.

56.     Defendants have and continue to directly infringe the '025 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '025 Patent.  Such products include computer devices, such as laptops, desktops, servers, and tablets, that utilize a digital data storage arrangement, a solid-state memory (SSD), a user interface, and a processor.  On information and belief, such Hitachi products include at least the server, laptop, phones and tablets and desktop systems that include one or more WD and/or HGST HDD, SSD, solid state hybrid drive (SSHD), or any other type of solid-state memory including, but not limited to, flash memory, RAM memory, and 3D XPoint memory.

57.     For example, Defendants have and continue to directly infringe at least claim 1 of the '025 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include a digital data storage arrangement, solid-state memory, a user interface, and a processor, such as HITACHI VSP 5500H:

58.     The HITACHI VSP 5500H includes a solid-state memory, such as a SSD, flash, RAM, or 3d XPoint memory.   The HITACHI VSP 5500H includes a digital data storage arrangement configured to store data, wherein the digital data storage arrangement is susceptible to data corruption or unavailability from mechanical shock, such as data stored on an HDD or SSD.  The HITACHI VSP 5500H includes a user interface configured to receive user interaction with the user interface.  The HITACHI VSP 5500H includes a processor configured to monitor the user interaction to define a particular use of a selected data stored on the digital data storage arrangement, such as SoC's located on the HDD, SSDs and throughout the digital storage arrangement.  The processor is further configured to transfer the selected data from the digital data storage arrangement to the solid-state memory based on the monitoring, such that the selected data is subsequently available in the solid-state memory without the need to access the digital storage arrangement, wherein the transfer of the selected data begins prior to the termination of the user interaction.

59.     Defendants have and continue to indirectly infringe one or more claims of the '025 Patent by knowingly and intentionally inducing others, including Hitachi customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology, such as laptops, desktops, servers, phones and tablets, that utilize digital data storage arrangement, solid-state memory, a user interface, and a processor.

60.     Defendants, with knowledge that these products, or the use thereof, infringe the '025 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '025 Patent by providing these products to end-users for use in an infringing manner.

61.     Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '025 Patent, but while remaining willfully blind to the infringement.

62.     EGT has suffered damages as a result of Defendants' direct and indirect infringement of the '025 Patent in an amount to be proved at trial.

63.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '025 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT V
### (Infringement of the '196 Patent)

64.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

65.     EGT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '196 Patent.

66.     Defendants have and continue to directly infringe the '196 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '196 Patent.  Such products include computer devices, such as laptops, desktops, servers, and tablets that contain a computer-readable medium which receive a command and perform identity and directive actions irrespective of the state of

16

the host device.  On information and belief, such Hitachi products include at least the server, laptop, desktop systems, phones and tablets that include one or more WD and/or HGST HDDs, an SSD, solid state hybrid drive (SSHD), or any other type of solid-state memory including, but not limited to, flash memory, RAM memory, and 3D XPoint memory.

67.     For example, Defendants have and continue to directly infringe at least claim 1 of the '196 Patent by making, using, offering to sell, selling, and/or importing into the United States products that that contain a computer-readable medium which receive a command and perform identity and directive actions, irrespective of the state of the device, such as HITACHI VSP 5500H. The HITACHI VSP 5500H contains a computer-readable medium storing instructions that, when executed by a computing system, cause the computing system to perform operations comprising receiving a command, the command related to one or more sets of data and a job to be performed with respect to the one or more of the sets of data.  The command is irrespective of a state of the host device, comprising two or more actions, wherein the two or more actions comprise one or more identity actions that identify the one or more sets of data, and one or more directive actions, distinct from the identity actions, that specify the job to be performed.  Upon information and belief, the data storage arrangement to perform a first portion of a data transfer operation related to one or more identified sets of data, the first portion of the data transfer operation performed before the command has been completed and after at least one identity action of the command has been performed.

68.     Defendants have and continue to indirectly infringe one or more claims of the '196 Patent by knowingly and intentionally inducing others, including Hitachi customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology,

such as laptops, desktops, servers, phones and tablets, that contain a computer-readable medium which receives a command and performs identity and directive actions irrespective of the state of the host device.

69.     Defendants, with knowledge that these products, or the use thereof, infringe the '196 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '196 Patent by providing these products to end-users for use in an infringing manner.

70.     Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '196 Patent, but while remaining willfully blind to the infringement.

71.     EGT has suffered damages as a result of Defendants' direct and indirect infringement of the '196 Patent in an amount to be proved at trial.

72.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '196 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

### COUNT VI
### (Infringement of the '785 Patent)

73.     Paragraphs 1 through 23 are incorporated by reference as if fully set forth herein.

74.     EGT has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '785 Patent.

75.     Defendants have and continue to directly infringe the '785 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each

and every limitation of one or more claims of the '785 Patent.  Such products include computer devices, such as laptops, desktops, and servers, that include an electronic memory, an electromechanical data storage arrangement, a user interface, and a controller.  On information and belief, such Hitachi products include at least the server, laptop and desktop systems that include one or more WD and/or HGST HDDs.

76.     For example, Defendants have and continue to directly infringe at least claim 1 of the '382 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include electronic memory, an electromechanical data storage arrangement, a user interface, and a controller, such as the HITACHI VSP 5500H.  The HITACHI VSP 5500H includes an electronic memory, such as HDDs, an SSD, solid state hybrid drive (SSHD), or any other type of solid-state memory including, but not limited to, flash memory, RAM memory, and 3D XPoint memory.   The HITACHI VSP 5500H also includes an electromechanical data storage arrangement, such as an HDD, and an enclosure at least partially containing the electronic memory and the electromechanical data storage arrangement, the enclosure of a size to be held in a user's hand.  The HITACHI VSP 5500H also includes a user interface configured to receive user inputs in the form of a user contact with the user interface and, upon information and belief, a controller configured to transfer first data from the electromechanical data storage arrangement to the electronic memory in response to the user contact, wherein the transfer of the first data begins before the user contact end and to enable transfer of the first data only so long as the user contact with the user interface is occurring.

77.     Defendants have and continue to indirectly infringe one or more claims of the '785 Patent by knowingly and intentionally inducing others, including Hitachi customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering

to sell, selling, and/or importing into the United States products that include infringing technology, such as laptops, desktops, and servers, that include an electronic memory, an electromechanical data storage arrangement, a user interface, and a controller.

78.     Defendants, with knowledge that these products, or the use thereof, infringe the '785 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '785 Patent by providing these products to end-users for use in an infringing manner.

79.     Defendants have induced infringement by others, including end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '785 Patent, but while remaining willfully blind to the infringement.

80.     EGT has suffered damages as a result of Defendants' direct and indirect infringement of the '785 Patent in an amount to be proved at trial.

81.     EGT has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '785 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, EGT prays for relief against Defendants as follows:

a.     Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.     An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, its

officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

      c.      An order awarding damages sufficient to compensate EGT for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

      d.      Entry of judgment declaring that this case is exceptional and awarding EGT its costs and reasonable attorney fees under 35 U.S.C. § 285; and

      e.      Such other and further relief as the Court deems just and proper.

Dated: August 27, 2021

Respectfully submitted,

/s/ *Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
 Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
**RUBINO LAW LLC**
830 Morris Turnpike
Short Hills, New Jersey 07078
Telephone: (973) 535-0920
Facsimile: (973) 535-0921

Justin Kurt Truelove
Texas Bar No. 24013653

Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston Street
Marshall, Texas 75670
Telephone: 903-938-8321
Facsimile: 903-215-8510

**ATTORNEYS FOR PLAINTIFF,**
 **ELITE GAMING TECH LLC**